**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JAGJEET SINGH,

Petitioner,

v.

MARK BOWEN, ACTING WARDEN OF THE ADELANTO DETENTION CENTER, ET AL.,

Respondents.

Case No. 5:26-cv-06237-AJR

**MEMORANDUM DECISION AND ORDER GRANTING PETITION AND ORDERING IMMEDIATE RELEASE**

## I.

## INTRODUCTION

On October 22, 2026, Petitioner Jagjeet Singh (A# 246-792-267) ("Petitioner"), an immigration detainee represented by counsel, filed a Verified Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (the "Petition"), challenging his detention in immigration custody. (Dkt. 1 at 1-6.) Pursuant to General Order 26-05, Respondents Mark Bowen, Acting Warden of the Adelanto Detention Center, David J. Venturella, Acting Director of Immigration and Customs Enforcement ("ICE"), Markwayne Mullin, Secretary of the Department of

Homeland Security ("DHS"), and Todd Blanche, Attorney General of the United States (collectively, "Respondents") were required to show cause why the Petition should not be granted no later than October 29, 2026. (Dkt. 4.) Respondents did not do so and therefore have consented to the relief sought in the Petition.[1] See C.D. Cal. L.R. 7-12. On October 30, 2026, Petitioner filed a Notice of Respondents' Non-Compliance with Court-Ordered Briefing Deadline. (Dkt. 6.) The parties have consented to proceed before the undersigned U.S. Magistrate Judge for all purposes. (Dkts. 3, 7.) **For the reasons set forth below, the Court GRANTS the Petition and orders Respondents to immediately release Petitioner from custody on Petitioner's prior conditions of release.**

## II.

## FACTUAL BACKGROUND

The Court sets forth a summary of the relevant factual background based on the facts alleged in the Petition, which is verified by counsel. (Dkt. 1 at 30.) Respondents were required to show cause why the Petition should not be granted no later than October 29, 2026, but did not do so. (Dkt. 4.) Therefore, the Court considers the following facts to be undisputed and conceded for purposes of ruling on the Petition. See C.D. Cal. L.R. 7-12; Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (explaining that courts must assume undisputed facts alleged in a habeas petition are true).

Petitioner is a native and citizen of India. (Dkt. 1 at 7.) Petitioner entered the United States without inspection on or about April 13, 2023. (Id.) Shortly after his

---

[1] The judges of the Central District of California have been notified by leadership at the U.S. Attorney's Office that Respondents will not file a notice of non-opposition in all immigration habeas actions due to the overall volume of such cases and therefore in some cases, Respondents simply will not file a response where they do not have an opposition argument to advance. Therefore, the Court understands Respondents' failure to respond to the Petition in this case as a decision not to advance any opposition argument, as opposed to simply missing a deadline.

entry, DHS briefly detained Petitioner pursuant to a Form I-200, Warrant for Arrest of Alien. (Id.) DHS thereafter affirmatively exercised its discretionary authority to release Petitioner on parole rather than continue his physical detention. (Id.) As a condition of release, Petitioner was enrolled in Alternatives to Detention ("ATD") and required to report to ICE as directed. (Id.) Since his release in April of 2023, Petitioner has fully complied with every condition imposed by DHS for approximately three and a half years. (Id.) Petitioner has never missed a scheduled ICE appointment and has consistently appeared before immigration authorities as directed. (Id.) Petitioner has never violated any ATD requirement or any other condition of his release. (Id.) Petitioner has no criminal history and has not engaged in conduct indicating that he poses a danger to the community or a risk of flight. (Id.)

On April 28, 2023, DHS served Petitioner with a Notice to Appear charging him solely under Immigration and Nationality Act ("INA") Section 212(a)(6)(A)(i). (Id. at 8.) Petitioner's removal proceedings remain pending before the Immigration Court, where he is pursuing asylum as protection from removal. (Id.) Petitioner has obtained employment authorization based upon his pending asylum application and has remained gainfully employed while pursuing his immigration proceedings. (Id.) Petitioner has developed substantial family and community ties within the United States. (Id.) Throughout Petitioner's approximately three and a half years of release, DHS remained fully aware of his whereabouts through his regular ICE reporting, continued ATD compliance, and consistent participation in the immigration process. (Id.) At no time before his re-detention did DHS notify Petitioner that he had violated any condition of release, failed to comply with any reporting requirement, or engaged in conduct warranting revocation of his previously granted liberty. (Id.)

On October 20, 2026, Petitioner voluntarily appeared for his regularly scheduled ICE appointment, as directed by DHS and consistent with his established

history of compliance since April of 2023. (Id.) Petitioner had attended every prior ICE appointment, complied with every ATD requirement, and remained available to immigration authorities throughout his release. (Id. at 9.) Petitioner appeared for his October 20, 2026 appointment in good faith, without any prior notice that DHS intended to revoke his liberty. (Id.) During his appointment, ICE officers took Petitioner into custody despite his complete compliance with all previously imposed conditions of release. (Id.) ICE officers failed to provide Petitioner with any meaningful explanation identifying a violation of law, violation of his parole or ATD conditions, criminal conduct, or other individualized factual basis warranting his immediate detention. (Id.) ICE officers did not identify any changed circumstance occurring after DHS's prior decision to release Petitioner on parole that would necessitate his immediate confinement. (Id.) ICE officers also did not afford Petitioner any meaningful opportunity to contest his detention before being detained. (Id.)

## III.
## SUMMARY OF PETITIONER'S CLAIMS

Petitioner's first claim for relief (Count I) is that his re-detention by immigration authorities without prior notice or a pre-deprivation hearing violated his procedural due process rights. (Dkt. 1 at 21-24.) Petitioner's second claim for relief (Count II) is that his detention without changed circumstances showing danger or flight risk violates his substantive due process rights. (Id. at 21-26.) Petitioner's third claim for relief (Count III) is that his arrest without changed circumstances violated the INA. (Id. at 26-29.) Petitioner seeks immediate release from custody and an order enjoining Respondents from re-detaining him without firs providing constitutionally adequate procedures. (Id. at 29.) Petitioner also seeks an award of reasonable attorneys' fees and costs under the Equal Access to Justice Act ("EAJA"). (Id. at 29-30.)

## IV.

## LEGAL STANDARD

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. There is no question that these protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)). To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)). Under Matthews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or

substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights." Regino, 133 F.4th at 959-60. Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993). By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests." Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted). To assess whether there has been a violation of a fundamental right, courts must begin with "a careful description of the asserted fundamental liberty interest." Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted). With that careful description in mind, courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed." Khachatryan v. Blinken, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

## V.

## ANALYSIS

It is undisputed that Petitioner entered the United States on April 13, 2023, was briefly detained by DHS, and then DHS affirmatively exercised its discretionary

authority to release Petitioner on parole rather than continue his physical detention. (Dkt. 1 at 7.)[2] Thus, the Court concludes that once Petitioner was released from custody on supervision, Petitioner acquired "a protected liberty interest in remaining out of custody." Pinchi v. Noem, 792 F.Supp.3d 1025, 1032 (N.D. Cal. July 24, 2025) (collecting cases); Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) ("The Supreme Court has recognized this protected liberty interest even though the released individual is subject to extensive conditions of release, like reporting regularly to a parole officer, not using alcohol, and not traveling out of the country."). Indeed, "the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." Pinchi, 792 F.Supp.3d at 1032 (internal quotation marks, brackets, and ellipses omitted). This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

Petitioner's liberty interest in remaining out of custody is strengthened by the length of time he has resided out of custody and built a life for himself in the United States. See, e.g., Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty."). Indeed, it is undisputed that Petitioner has developed substantial family and community ties within the Untied States. (Dkt. 1 at 8.) Petitioner's undisputed ties to the community further strengthen his liberty interest in remaining out of custody. See, e.g., Garcia v. Andrews, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) ("The

---

[2] The fact that Petitioner was released from custody necessarily means that Petitioner demonstrated to the satisfaction of immigration officials that Petitioner's release would not pose a danger to property or persons and that Petitioner was likely to appear for any future proceeding. See Fernandez Lopez v. Wofford, 2025 WL 2959319, at *2 (E.D. Cal. Oct. 17, 2025).

length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty.”).

It is also undisputed that Petitioner was re-detained by immigration authorities on October 20, 2026, while attending a scheduled ICE appointment and was not provided prior notice or a pre-deprivation hearing. (Dkt. 1 at 8-9.) It is further undisputed that Petitioner had complied with all previously imposed conditions of release. (Id.) Thus, the Court concludes that Petitioner’s re-detention by immigration authorities on October 20, 2026, without notice or a pre-deprivation hearing, violated Petitioner’s procedural due process rights. See, e.g., Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) (“Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing.”), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026); Fernandez Lopez v. Wofford, 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) (“On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained.”); Maldonado Vazquez v. Feeley, 805 F. Supp. 3d 1112, 1148 (D. Nev. 2025) (“Where, as here, a noncitizen is detained after having been ordered released, without any process provided by the Government for challenging his continued detention, detention becomes arbitrary and violates due process.”).

Given this violation of Petitioner’s due process rights, the Court further concludes that “Petitioner’s release is necessary to return him to the status quo.” Nazarian v. Noem, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is “the last uncontested status which preceded the pending controversy.” GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted). The last uncontested status here is Petitioner’s release from custody under his prior ATD conditions. See Nazarian, 2025 WL 3236209, at *7 (“The last uncontested status in this case is Petitioner’s release on his second OSUP before his current re-detention.”). “Accordingly, Petitioner’s release from

custody is the appropriate remedy." Id.; see Esmail v. Noem, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview *ex post facto*, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

Moreover, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained.[3] See, e.g., Baltazar v. Noem, 2026 WL 413527, at *5 (C.D. Cal. Jan. 30, 2026) ("Where courts have found the procedural due process violation examined here, they routinely order release and enjoin Respondents from re-detaining petitioners without providing a pre-detention hearing before a neutral arbiter."); Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)). Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. See, e.g.,

[3] As set forth above, Petitioner has a substantial liberty interest in remaining free from detention which must be considered under the first Matthews factor. Under the second Matthews factor, the risk of erroneous deprivation is very high because it is undisputed that Petitioner had complied with all previously imposed conditions of release and developed substantial family and community ties within the Untied States. (Dkt. 1 at 8-9.) Finally, under the third Matthews factor, the Government's interest in detaining Petitioner without a pre-deprivation hearing is very low because a bond hearing is routine and can be easily provided. See Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025).

Baltazar, 2026 WL 413527, at *6; see also Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo, 2025 WL 2381464, at *8 ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community."). Thus, the Court concludes that the Petition must be granted with the foregoing prospective injunctive relief.

A permanent injunction may be entered, at the discretion of the Court, where the movant shows "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, (2006). The Court finds that Petitioner has made such a showing here. Petitioner has suffered an irreparable injury by being re-detained in violation of his due process rights, and would again if Respondents repeat such conduct. Legal remedies such as damages would be inadequate to cure the unconstitutional deprivation of liberty. And the balance of hardships and public interest in merely requiring Respondents to provide basic due process in the event they seek to re-detain Petitioner, versus forcing Petitioner again to suffer detention and file a habeas petition to secure his release, favor the imposition of a limited

injunction against future re-detention without notice and a pre-deprivation hearing.[4]

Thus, the Court concludes that Petitioner has made a sufficient showing under the eBay Inc. factors to justify a limited permanent injunction targeted at the specific harms presented in this case. See, e.g., Huy Cu v. Marin, 2026 WL 1427009, at *1-3 (C.D. Cal. May 21, 2026) (rejecting objections that prospective injunctive relief is inappropriate in the context of an immigration habeas petition); Araujo-Contreras v. Janecka, 2026 WL 1625368, at *1-4 (C.D. Cal. June 3, 2026) (rejecting objections to permanent injunctive relief requiring a pre-deprivation hearing before re-detention in the context of an immigration habeas petition finding a violation of the petitioner's procedural due process rights).

Finally, the Court notes that Petitioner also requested an award of reasonable attorneys' fees and costs. (Dkt. 1 at 29-30.) The Court will consider an application under the Equal Access to Justice Act ("EAJA") that is filed within 30 days of entry of final judgment in this action. See Rahimi v. Semaia, 2026 WL 246066, at *3 (C.D. Cal. Jan. 27, 2026) ("The Court will consider an application requesting costs and reasonable attorney's fees under the EAJA that is filed within 30 days of final judgment in this action."). In sum, the Court GRANTS the relief clearly sought in the Petition. (Dkt. 1 at 29-30.) Respondents were required to show cause why the Petition should not be granted no later than October 29, 2026, but did not do so. (Dkt. 4.) Thus, the Court concludes that Respondents have consented to the Court granting the relief requested in the Petition. See C.D. Cal. L.R. 7-12. The Court also concludes that Petitioner has established a *prima facie* case entitling him to the relief requested and Respondents declined to present any fact or argument to oppose the requested relief. Thus, the Court concludes that Petitioner is entitled to the relief

---

[4] Where the party opposing injunctive relief is the government, "the third and fourth factors—the balance of equities and the public interest—merge." Garcia v. County of Alameda, 150 F.4th 1224, 1234 (9th Cir. 2025) (internal quotations omitted).

requested in the Petition based on the Court's consideration of the merits of Petitioner's claims, separate and apart from the fact that Respondents have consented to such relief being granted.

## VI.

## CONCLUSION

Based on the foregoing, the Court GRANTS the Petition as follows. Respondents shall immediately release Petitioner Jagjeet Singh (A# 246-792-267) ("Petitioner") from custody on his prior conditions of release (only those conditions in place prior to Petitioner's October 20, 2026 re-detention). Respondents shall also immediately return any confiscated property and documents to Petitioner upon release. Respondents shall not re-detain Petitioner pursuant to 8 U.S.C. § 1226 without providing at least seven (7) days' notice and a pre-deprivation bond hearing. The pre-deprivation bond hearing shall occur before an Immigration Judge at which the Government bears the burden of proof to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. The Immigration Judge must conduct an individualized assessment of Petitioner's suitability for bond in light of the forgoing standard. Respondents shall file a notice of compliance no later than **three days from entry of Judgment**.

IT IS SO ORDERED.

DATED: November 2, 2026

Joel Richlin

HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE